**In re Richard J. ROBINSON, Sr., Bankrupt.**

**Harvey J. PUTTERBAUGH, Trustee, Plaintiff,**

v.

**Rosalie M. ROBINSON, Defendant.**

**Bankruptcy No. BK–78–95.**

United States Bankruptcy Court, D. Maine.

Feb. 20, 1981.

Harvey J. Putterbaugh, Portland, Me., for plaintiff.

Walter E. Brown, Jr., Gray, Me., for defendant.

FREDERICK A. JOHNSON, Bankruptcy Judge.

In this proceeding[1] the Trustee seeks to recover from the Defendant, Rosalie M. Robinson, former spouse of the Bankrupt, a $4,000 payment made to the Defendant by one Lee Adams, on or about January 20, 1978. The Trustee alleges that this payment was a preferential transfer within the meaning of Section 60 of the Bankruptcy Act.[2]

The Court concludes that the Trustee has failed to prove a transfer of property of the Bankrupt, to or for the benefit of a creditor for or on account of an antecedent debt, essential elements of a voidable preference.

The Court's findings of fact are based upon the testimony of witnesses and exhib-

---

1. Because this bankruptcy case was commenced under the old Bankruptcy Act, this proceeding will be determined under that Act. *See* P.L. 95–598, Section 403.

2. The Trustee also seeks to recover a certain steel building situated on real estate owned by

the Defendant which was formerly owned by the Defendant and the Bankrupt jointly. This issue will require further evidence and together with the disposition of other real estate will be scheduled for further pretrial conference.

its offered at a hearing on the Trustee's Complaint.

The transactions out of which the Trustee's Complaint arise commence with the purchase, as joint tenants, of certain real estate in North Yarmouth, Maine, by the Bankrupt and the Defendant, who were then married, from Gilbert P. Martin et al., by Deed dated June 18, 1966 and recorded in the Cumberland County Registry of Deeds in Book 2969, Page 501.

On August 27, 1971, Mr. and Mrs. Robinson granted a mortgage on this property to the South Portland Federal Savings and Loan Association. That mortgage is recorded in Book 3189, Page 122.

Some time during early 1976 the Bankrupt negotiated with one Theodore Mundy to sell a one-half interest in the Bankrupt's gravel business. Pursuant to those negotiations, the Bankrupt and Mr. Mundy organized a corporation, Gravel Pits, Inc. On May 13, 1976 the Bankrupt and the Defendant, who were then still married, conveyed a portion of the jointly owned real estate to Gravel Pits, Inc. for $15,000. This conveyance was subject to the South Portland Federal Savings and Loan Association mortgage.

On August 2, 1976, the Bankrupt attempted to convey, by quitclaim deed, his interest in the remainder of the above-described real estate to the Defendant. The parties were still married. This conveyance was also made subject to the mortgage held by the South Portland Federal Savings and Loan Association.

On January 3, 1977, the Bankrupt sold all of his interest in the corporation, Gravel Pits, Inc. to Mr. Mundy. As part of the consideration for this transfer Mr. Mundy was "supposed to clean up the mortgage," meaning the South Portland Federal Savings and Loan Association mortgage, which covered both the parcel conveyed to Gravel Pits, Inc. and the parcel conveyed to the Defendant.

On July 7, 1977 the Bankrupt and the Defendant entered into a property settlement agreement which provided:

4. Both parties agree that all equity in land and buildings and the contents and furnishings therein, and real estate owned by the wife situated on Route 231, Town of North Yarmouth, County of Cumberland, State of Maine shall be and is the sole property of wife.

On the same date, July 7, 1977, a divorce judgment was entered which provided:

It is further ordered that in the event of a default of payment on the mortgage indebtedness of Theodore Mundy on property located on Route 231 in North Yarmouth, Maine, Richard T. Robinson shall assume payments on said property.

It is determined that there is marital property consisting of the residence land, buildings and contents therein located on Route 231 in North Yarmouth, Maine and it is ordered that said property, both real and personal shall be disposed of in accordance with the Settlement Agreement by and between the parties which said Agreement is incorporated as part of this Judgment.

On July 20, 1977, again by quitclaim deed, the Bankrupt conveyed to the Defendant the same property that was described in his previous Deed to the Defendant dated August 2, 1976.[3] The Deed of July 20, 1977 made reference to the divorce judgment dated July 7th. This conveyance was also made subject to the mortgage held by South Portland Federal Savings and Loan Association.

Mr. Mundy made the required mortgage payments until the fall of 1977 when he fell behind and a notice of foreclosure was mailed by the Bank to Mrs. Robinson, the Defendant. The Defendant did not call upon the Bankrupt to pick up the payments. Instead, she and her attorney made an agreement with Mr. Mundy which provided that the Defendant would pay off the balance of the mortgage note and that Mr. Mundy would later reimburse her. The De-

---

**3.** The August 2, 1976 conveyance was probably defective because it was made by quitclaim deed while the Bankrupt and the Defendant were still married to each other.

fendant sold a portion of her land and paid the mortgage note in full.

In the meanwhile, by some means, not clear in the evidence, Mr. Mundy transferred his rights and obligations relating to Gravel Pits, Inc. to a Mr. Lee Adams.

On or about January 20, 1978, Mr. Adams delivered his check to the Defendant in the amount of $4,000. The check contained the following: "in full settlement for claims arising out of mortgage to South Portland Savings and Loan Association, dated August 27, 1971."

The Bankrupt filed his voluntary bankruptcy petition on February 10, 1978. The Trustee, by his Complaint, seeks to recover the $4,000 payment made by Lee Adams to the Defendant on the ground that it was a voidable preference.

## DISCUSSION

Section 60 of the Bankruptcy Act [11 U.S.C. § 96] provides as pertinent:

a. (1) A preference is a transfer, as defined in this Act, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this Act, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.

The Trustee argues that the $4,000 payment by Mr. Adams was a transfer of property of the Bankrupt to the Defendant for or on account of an antecedent debt owed by the Bankrupt to the Defendant. The evidence does not support the Trustee's argument.

The evidence discloses that the payment of $4,000 by Lee Adams to the Defendant was in satisfaction of a claim of the Defendant in her own right, against Mr. Mundy. The consideration for her claim was payment by her, from her own funds, of the balance due on the South Portland Federal Savings and Loan Association mortgage

note. When the Defendant, pursuant to an agreement with Mr. Mundy that he would reimburse her, paid off the mortgage note, a debtor-creditor relationship arose directly between her and Mr. Mundy.

When Lee Adams, Mr. Mundy's assignee, paid Mr. Mundy's obligation, which he had assumed, he was paying a debt owed by Mr. Mundy to the Defendant in her own right. The debt was paid with Mr. Adams' own funds. The payment was clearly not a transfer of property of the Bankrupt to the Defendant for or on account of an antecedent debt owed by the Bankrupt to the Defendant.